TAMANY J. VINSON BENTZ (SBN 258600)
tamany.bentz@dlapiper.com
AARON T. GOODMAN (*Pro Hac Vice*)
aaron.goodman@dlapiper.com
HECTOR E. COREA (SBN 318971)
hector.corea@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel: 310.595.3000
Fax: 310.595.3300

Richard J. Frey (SBN 174120)
**EPSTEIN BECKER GREEN**
1925 Century Park Easts
Suite 500
Los Angeles, California 90067

Attorneys for Plaintiff and Counterdefendant
CTC GLOBAL CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CTC GLOBAL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JASON HUANG, an individual, RULONG CHENG, an individual; and JIANPING HUANG a/k/a JAMES HUANG, an individual,<br><br>Defendant.<br><br>―――――――――<br><br>JASON HUANG, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>CTC GLOBAL CORPORATION, a Delaware Corporation,<br><br>Counterdefendant. | CASE NO. 8:17-cv-02202-AG-KES<br><br>**PLAINTIFF CTC GLOBAL CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF INVESTIGATIVE COSTS**<br><br>**[Defendants' MIL NO. 1]**<br><br>Hearing Date: July 29, 2019<br>Time: 8:30 a.m.<br>Trial Date: August 13, 2019 |

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and Counter-defendant CTC Global Corporation ("CTC") respectfully submits this memorandum in opposition to Defendants' Motion *in Limine* No. 1 seeking to exclude argument and evidence of CTC's investigative costs for its claims against Defendants Jason Huang, James Huang, and Rulong Chen.

## I. INTRODUCTION

Defendants repeat for the third time their claim that CTC is not entitled to recover its investigative costs or attorneys' fees as damages for its claims against Defendants. (Dkt. No. 167-1, at 29, 31; Dkt. No. 228, at 11.) They contend this is true as a matter of law. It is not.

Defendants' selective quotations of inapposite authorities fail to account for the plain language of the California Uniform Trade Secrets Act ("CUTSA") that permits a prevailing party to seek costs "actually incurred and reasonably necessary." Such costs include the services of expert witnesses, like the forensic and investigative experts CTC hired to examine Defendant Huang's backdoor dealings. Not to mention CTC's right to seek attorneys' fees as damages for its contract claims.

But were the Court to reject these authorities, Defendants have not explained why the fact that CTC investigated Defendants is unfairly prejudicial. The expenses CTC incurred to investigate Huang is certainly probative of CTC's state of mind—after all, common sense dictates that one would forego spending six-figures on a snipe hunt unless there was a legitimate reason for doing so. Here, the reason was to probe whether Defendant Huang actually engaged in surreptitious dealings with competitor companies as communicated by third parties to CTC.

In short, the jury should be entitled to hear of CTC's costs in investigating Defendant Huang's conduct because those costs may serve as damages and reflect CTC's state of mind and whether it had a legitimate reason for terminating Defendant Jason Huang's employment.

## II. FACTUAL BACKGROUND

Defendant Jason Huang is CTC's former CEO, CTO, and Board Member, who joined the company in August 2011. (Dkt. No. 194-3 at 2-3, ¶¶ 1-3.) Huang was also CTC's on-site representative at a joint venture (the "JV") between CTC and a Chinese company, NARI Group, and the General Manager of the JV. (*Id.* at 4-5, ¶¶ 4-5.) Defendant Huang entered into an Invention and Assignment Agreement ("Agreement") with CTC as a condition of employment. (Dkt. No. 161-3, at 6, ¶ 26; *id.* at 39, ¶ 14 (fee-shifting provision).) CTC terminated Huang in February 2017 due to his failure to cooperate in CTC's investigation into his dealings in China, including his intentional deletion of data from a CTC-issued iPhone (in particular, a WeChat application and related messages) and providing the company with an iPad reset to its factory settings. (Dkt. No. 194-3 at 43-44, ¶ 37; Dkt. No. 227 at 9-14.)

As part of its prelawsuit investigation, CTC and its counsel engaged forensic experts to identify and uncover Defendant Huang's dealings in China to evaluate whether Defendant Huang committed actionable wrongs. (Dkt. No. 167-44 at 5.) This level of investigation was required in part because Defendants had destroyed a significant amount of data and evidence that would have been available to CTC. Thus, the results of the investigations were instrumental in gathering the facts and forensic evidence that led CTC to file this action on December 18, 2017. (Dkt. No. 1.)

During discovery, CTC's damages expert calculated multiple damages measures, including actual damages based on the salaries and travel expenses paid to Defendants, the JV's lost profits, CTC's prelawsuit investigation costs, and Defendants' unjust enrichment. (Dkt. No. 167-44 at 4-7.) CTC's corporate designee also testified as to damages. While CTC's designee noted CTC did not "los[e] actual projects," he did testify that it suffered "damages" in the form of "time and effort and cost into [investigating Defendants]" that are "certainly out-of-pocket damages we have to deal with." (Dkt. No. 167-11 at 87 .) He also stated that the "damages aspect

of this case is being calculated by the attorneys. And that will come." (*Id.* at 88.)

## III.   ARGUMENT

As a preliminary matter, Defendants misstate the law. CTC is not required "to prove actual damage as a necessary element of its misappropriation claims." (Dkt. No. 231 at 5.) Federal and state law provide multiple damage measures for trade secret misappropriation, including unjust enrichment and reasonable royalty damages, which CTC seeks here. *See Ajaxo Inc. v. E*Trade Group Inc.*, 135 Cal.App.4th 21, 61 (2005); 18 U.S.C. § 1836(b)(3)(B)(i)(II). The jury is entitled to hear all of CTC's damages theories. *See Roadrunner Transportation Servs., Inc. v. Tarwater*, No. SACV101534AGMLGX, 2013 WL 12171729, at *2 (C.D. Cal. Aug. 9, 2013) ("In a trade secrets case, the trier of fact has the discretion to use any of the potential measures of damages identified in [CUTSA].").

Second, none of Defendants' cited authorities support the proposition that CTC's investigation costs are unrecoverable as damages for *all* of CTC's claims. *Page* dealt with a "right of publicity" claim, and found "investigation expenses, including computer legal research; postage, telephone photocopying and fax charges" were unrecoverable under California's cost-shifting statute addressing tort claims. *Page v. Something Weird Video*, 960 F. Supp. 1438, 1447 (C.D. Cal. 1996); Cal. Civ. Code § 1033.5; *but see Taylor v. Long Beach Mem'l Med. Ctr.*, No. B240823, 2014 WL 1255314, at *18 (Cal. Ct. App. Mar. 27, 2014), as modified (Apr. 23, 2014) (refusing to interpret § 1033.5 as "a blanket preclusion of a costs award for prelawsuit mediation expenses."). Similarly, *Express* addressed investigative costs related to a fraud claim, finding that plaintiff's "investigative costs" were akin to "attorneys' fees," and holding the costs were unrecoverable because there was no statutory basis for fee-shifting in the "copyright context." *See Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 979 (C.D. Cal. 2006).

Finally, *Garl* involved a federal communications interception claim, and held that under that statute, "pre-filing investigation costs are not recoverable." *See Joe*

*Hand Promotions, Inc. v. Garl*, No. 1:12-CV-0672- LJO, 2013 WL 4736826, at *3 (E.D. Cal. Sept. 3, 2013), report and recommendation adopted, No. 1:12-CV-00672-LJO, 2013 WL 5279000 (E.D. Cal. Sept. 18, 2013); 47 U.S.C. § 553; *see also See Cristobal v. Equifax, Inc.*, No. 16-CV-06329-JST, 2017 WL 1489274, at *6 (N.D. Cal. Apr. 26, 2017) (plaintiff's costs in reviewing credit reports were unrecoverable absent statutory basis for prelitigation costs).

In contrast, the controlling statutes here permit recovery for investigative costs like those sought by CTC. CUTSA provides "reasonable attorney's fees and costs," to a prevailing party who proves willful misappropriation. Cal. Civ. Code § 3426.4. This includes the "services of expert witnesses," to the extent a party's costs were "actually incurred and reasonably necessary" to the "preparation for trial." *Id*.

Whether CTC will *in fact* recover for its investigative costs is irrelevant. What matters is that CTC *can* seek recovery for them by statute—thus rendering CTC's investigative costs relevant and admissible. *See Tarwater*, 2013 WL 12171729, at *4 (awarding attorneys' fees and "investigative costs" under CUTSA to prevailing plaintiff for costs related to "forensic computer analyst"); Fed. R. Evid. 401.

Moreover, CTC is entitled to seek its investigation costs as damages for its breach of contract claims against Defendants Jason Huang and Rulong Chen. *See Brandt v. Superior Court*, 37 Cal. 3d 813, 819 (1985) (attorney's fees recoverable as contract damages for bad faith insurance claim); *Monster, LLC v. Superior Court*, 12 Cal. App. 5th 1214, 1231 (2017) ("Monster has a right to have a jury determine the amount of attorney's fees resulting from its alleged breach of the Termination Agreement and the 2013 Unit Repurchase Agreement.").

In fact, several courts have awarded prelitigation costs in similar circumstances where the parties were entitled to attorney fee awards under a controlling contract. *See Watermill Flying Point Trust v Ronald Arrache Const. Co., Inc*., No. BC422563, 2016 WL 641252, at *4 (Cal. Super. Jan. 14, 2016) ("prelitigation fees can be recoverable" per statute authorizing fee awards in action on contract with fee-shifting

-4-

provisions where moving party shows the costs "contributed to the success of the litigation."); *Hogar Dulce Hogar v. Cmty. Dev. Com. of City of Escondido*, 157 Cal. App. 4th 1358, 1370 (2007), as modified (Jan. 10, 2008) (holding Cal. Civ. Code § 1021.5 permitting "award [of] attorneys' fees" to public interest litigants "does not expressly prevent the award of pre-complaint attorney fees").

The result should be no different here, where CTC and Jason Huang entered into the Agreement providing for attorneys' fees to the prevailing party. *See also Kinsey v Trizec Northpoint LLC*, No. BC468847, 2013 WL 1785118 (Cal. Super. Apr. 12, 2013) ("The court does not reduce the fees for prelitigation expenses since prelitigation expenses are not precluded by [the contract]."); *La Mesa–Spring Valley School Dist. v. Otsuka*, 57 Cal.2d 309, 315–318 (1962) (pre-litigation fees permitted in eminent domain action under former statute allowing "reasonable attorney fees"). CTC can thus seek recovery for its attorney-led pre-lawsuit investigation and related costs. Regardless of whether it ultimately obtains that recovery, the fact that CTC incurred these costs are relevant to making this determination at trial.

But were the Court to hold otherwise, Defendants still have not explained why the fact that CTC investigated Defendants is irrelevant or unduly prejudicial. The expenses CTC incurred to investigate Huang are probative of CTC's state of mind, which goes directly to whether CTC had a legitimate business reason for terminating Defendant Huang.[1] *See Loggins v. Kaiser Permanente Internat.*, 151 Cal. App. 4th 1102, 1110–11 (2007) (holding defendant employer "produced sufficient evidence showing a legitimate reason" for plaintiff's termination where it "conduct[ed] a preliminary review" and "interviewed 13 witnesses" to "learn the extent to which the allegations were accurate."); *Mills v. Lynwood Unified Sch. Dist.*, No. CV0705055DDPCTX, 2009 WL 10673227, at *4 (C.D. Cal. Sept. 22, 2009) (holding state of mind evidence admissible where it was "relevant to establish the District's

---

[1] CTC acknowledges that this contention would be obviated were the Court to issue a final order based on its tentative order on CTC's motion for summary judgment.

DLA Piper LLP (US)
Los Angeles

-5-
PLAINTIFF AND COUNTERDEFENDANT CTC GLOBAL CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1
WEST\287163103.3

motive and intent in taking the employment actions at issue in this case."). The expenses also reflect CTC's state of mind in pursuing its trade secret claims based on allegations of Defendant Huang's conduct in China. In short, Defendants' boilerplate contentions that these costs supporting CTC's legitimate termination decision are "substantially outweighed by the danger of unfair prejudice" cannot support a finding of exclusion.

## IV. CONCLUSION

For the aforementioned reasons, CTC requests that the Court deny Defendants' Motion *in Limine* No. 1.

Dated: July 22, 2019         DLA PIPER LLP (US)

By:/s/ TAMANY J. VINSON BENTZ
TAMANY J. VINSON BENTZ
AARON T. GOODMAN
HECTOR E. COREA

Attorneys for Plaintiff and Counterdefendant
CTC GLOBAL CORPORATION, a Delaware corporation